ACCEPTED
03-14-00629-CV
4001961
THIRD COURT OF APPEALS
AUSTIN, TEXAS
2/3/2015 1:46:13 PM
JEFFREY D. KYLE
CLERK

NO. 03-14-00629-CV

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AUSTIN, TEXAS

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

2/3/2015 1:46:13 PM

JEFFREY D. KYLE
Clerk

LOS FRESNOS CONSOLIDATED INDEPENDENT SCHOOL DISTRICT,
and
MICHAEL L. WILLIAMS, STATE COMMISSIONER OF EDUCATION,
in his official capacity only,
*Appellants*
v.
JORGE VAZQUEZ,
*Appellee*

On Appeal from the 419th District Court, Travis County, Texas
Trial Court Cause No. D-1-GN-13-003654

TEXAS ASSOCIATION OF SCHOOL BOARDS  LEGAL ASSISTANCE FUND'S
BRIEF OF *AMICUS CURIAE*
IN SUPPORT OF APPELLANTS

CLAY T. GROVER
State Bar No. 08550280
cgrover@rmgllp.com
CAITLIN H. SEWELL
State Bar No. 24074432
csewell@rmgllp.com
ROGERS, MORRIS & GROVER, L.L.P.
5718 Westheimer, Ste. 1200
Houston, Texas   77057
Telephone:  (713) 960-6000
Facsimile:   (713) 960-602
ATTORNEYS FOR *AMICUS CURIAE*
TEXAS ASSOCIATION OF SCHOOL
BOARDS LEGAL ASSISTANCE FUND

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................. i

TABLE OF AUTHORITIES .............................................................................. ii

STATEMENT OF INTEREST OF *AMICUS CURIAE* ............................................. 2

STATEMENT OF THE CASE .......................................................................... 4

ISSUE PRESENTED ...................................................................................... 9

SUMMARY OF THE ARGUMENT ................................................................... 9

STANDARD OF REVIEW ............................................................................... 10

ARGUMENT AND AUTHORITIES ................................................................... 10

    I.     The State has a Paramount Interest in Protecting School-Age Children ............................................................................................. 10

          A.    Legislative Protection of School Age Children ........................ 11

          B.    Judicial Protection of School-Age Children ............................ 13

    II.    Excluding Student Statements Contravenes the State's Interest in Protecting Children and Maintaining an Efficient Educational System ....................................................................................... 14

    III.   Student Statements are Sufficiently Trustworthy and Reliable to Satisfy the Purposes of the Hearsay Rule ........................................... 17

CONCLUSION ............................................................................................ 20

CERTIFICATE OF COMPLIANCE ................................................................... 22

CERTIFICATE OF SERVICE ........................................................................... 23

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Maryland v. Craig*,
497 U.S. 836 (1990) ...................................................................................... 12, 13

*Osborne v. Ohio*,
495 U.S. 103 (1990) ........................................................................................... 10

## STATE CASES

*Briggs v. State*,
789 S.W.2d 918 (Tex. Crim. App. 1990) ............................................................ 13

*Cano v. Nino's Paint & Body Shop*,
2009 LEXIS 2713 (Tex. App. —Houston [14th Distr.] April 16, 2009, no pet.) ............. 18

*Dodd v. Meno*,
870 S.W.2d 4 (Tex. 1994) .................................................................................... 9

*Ex Parte Morales*,
212 S.W.3d 483 (Tex. App.—Austin 2006, pet. denied) ........................................... 11, 14

*Gilder v. Meno*,
926 S.W.2d 357 (Tex. App.—Austin 1996, writ denied) ................................................ 10

*Gonzalez v. State*,
818 S.W.2d 756 (Tex. Crim. App. 1991) ........................................................... 13

*Marz v. State*,
953 S.W.2d 321 (Tex. App.—Austin 1997), *aff'd*, 987 S.W. 2d 577 .............................. 13

*State v. Oakley*,
356 S.W.2d 909 (Tex. 1962) ............................................................................... 18

## FEDERAL STATUTES

29 U.S.C. § 1232g ................................................................................................. 10

42 U.S.C §§ 1751-1769 ......................................................................................... 11

# STATE STATUTES

Tex. Admin. Code § 129.1029(c)(2) ................................................................. 14

Tex. Code of Crim. Proc. § 38.071 .................................................................. 13

Tex. Code of Crim. Proc. §§ 38.071, 51.095 .................................................. 12

Tex. Code of Crim. Proc. § 63.019 ............................................................. 11, 13

Tex. Const. Art. VII § 1 .................................................................................. 14

Tex. Educ. Code § 11.151(b) ............................................................................. 2

Tex. Educ. Code § 21.255 ................................................................................ 12

Tex. Educ. Code §§ 21.206 ......................................................................... 16, 18

Tex. Educ. Code § 21.207 .........................................................................*Passim*

Tex. Fam. Code §§ 104.002-104.006 .............................................................. 12

Tex. Gov't Code § 2001.081 ................................................................... 8, 12, 17

Tex. Penal Code § 21.12 .................................................................................. 11

# RULES

Tex. R. of Evid. 803, 804 ................................................................................ 18

NO. 03-14-00629-CV

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AUSTIN, TEXAS

LOS FRESNOS CONSOLIDATED INDEPENDENT SCHOOL DISTRICT,
and
MICHAEL L. WILLIAMS, STATE COMMISSIONER OF EDUCATION,
in his official capacity only
*Appellants*

v.

JORGE VAZQUEZ,
*Appellee*

On Appeal From the 419th District Court, Travis County, Texas
Trial Court Cause No. D-1-GN-13-003654
Honorable Scott Jenkins, Judge Presiding

TEXAS ASSOCIATION OF SCHOOL BOARDS
LEGAL ASSISTANCE FUND'S BRIEF
OF *AMICUS CURIAE* IN SUPPORT OF APPELLANTS

The Texas Association of School Boards Legal Assistance Fund, as *amicus curiae*, respectfully submits this Brief in support of Appellants Michael L. Williams, the Texas Commissioner of Education ("Commissioner"), and Los Fresnos Consolidated Independent School District ("Los Fresnos CISD", "LFCISD" or "the District").

1

## STATEMENT OF INTEREST OF *AMICUS CURIAE*

Nearly 800 public school districts in Texas are members of the Texas Association of School Boards Legal Assistance Fund ("TASB LAF"), which advocates the positions of local school districts in litigation with potential statewide impact. The TASB LAF is governed by three organizations: the TASB, the Texas Association of School Administrators ("TASA"), and the Texas Council of School Attorneys ("CSA").

TASB is a non-profit unincorporated association of public school districts in the State of Texas. Approximately 1,030 public school districts in the state, through their elected boards of trustees, are members of TASB. Approximately 146 educational cooperatives, 20 education service centers and 45 junior colleges are also members. For all these public entities combined, the trustees total more than 7,200. Under state law, the board of trustees of a school district has "the exclusive power and duty to govern and oversee the management of the public school of the district." *See* Tex. Educ. Code § 11.151(b). Thus, TASB members are responsible for the governance of Texas public schools, in accordance with state and federal law.

TASA represents the superintendents and other administrators of the independent school districts in Texas. These individuals are responsible for

2

implementing and carrying out the education policies adopted by their local boards of trustees.

CSA is comprised of attorneys who represent more than ninety percent (90%) of the public school districts in Texas.

This appeal involves an important question concerning the application of the rules of evidence, specifically the hearsay rules, in connection with a teacher non-renewal hearing governed by § 21.207 of the Education Code. The TASB LAF's interest in the outcome of this appeal arises from its concern that the Appellant in this case is essentially asking that school administrators be required to present students as live witnesses at teacher nonrenewal hearings conducted under § 21.207. The TASB LAF maintains that previously-collected written or oral student statements should be admissible in § 21.207 teacher nonrenewal hearings. As such, the TASB LAF contends that the Commissioner of Education correctly determined that student statements were properly admitted in Appellee Jorge Vazquez's ("Appellee" or "Vazquez") § 21.207 nonrenewal hearing, and served as substantial evidence in support of his termination. For these reasons, TASB LAF submits this Brief, urging the Court to uphold the Commissioner's decision.

## STATEMENT OF THE CASE

Vazquez appealed the Los Fresnos CISD Board of Trustees' decision to terminate his employment to the Commissioner of Education. The Commissioner upheld the Board of Trustees' decision, finding that it was supported by substantial evidence. Upon subsequent appeal, the district court reversed and remanded the case to the Commissioner to enter an order reversing the board's nonrenewal of Vazquez's one-year term contract. This appeal by the Commissioner and Los Fresnos CISD followed.

During the 2012-2013 school year, Vazquez taught banking and financing, computer programming, and keyboarding at the Los Fresnos United 9th grade campus under the supervision of Principal Joseph Villarreal. A.R. Vol. II at 114, 134. In March 2013, Principal Villareal issued a "Notice of Warning" to Vazquez arising from numerous student reports of Vazquez's inappropriate comments in the classroom. A.R. Vol. II at 408. Principal Villareal collected a total of eleven statements from six different students in relation to Vazquez's classroom comments. A.R. Vol. II at 414-420, 428-434.[1]

The March 2013 Notice of Warning from Principal Villareal was in addition to two previous Notice of Warnings issued to Vazquez during the prior 2011-2012

---

[1] The student statements collected by Principal Villareal and the statements later collected by Ms. Amaro-Sibaja in connection with her grievance investigation are intermixed in Exhibit 11, which was admitted over objection in Vazquez's nonrenewal hearing. A.R. Vol. II at 414, 418-420, 428-434 (statements collected by Principal Villareal); 415-417, 421-427, 435-438 (statements collected by Ms. Amaro-Sibaja); *see also* A.R. Vol. II at 200 (identifying statements dated April 25th and May 3rd as those statements collected by Ms. Amaro-Sibaja).

4

school year.  A.R. Vol. II at 410, 440.  Former Principal McDonough (Principal Villareal's predecessor) issued a Notice of Warning to Vazquez in April 2012 after learning from students that Vazquez showed an unsuitable video to the class.  A.R. Vol. II at 134-137, 440.[2]  Principal McDonough also issued a second Notice of Warning to Vazquez later in April 2012, resulting from a student's complaint to her parent that Vazquez pretended to videotape her in the classroom as a disciplinary technique.  A.R. Vol. II at 140-143, 410.  Principal McDonough collected eight students' statements in connection with this videotaping incident.  A.R. Vol. II at 450-457.[3]

After receiving his third Notice of Warning from Principal Villareal in March 2013, Vasquez filed a grievance with the District.  A.R. Vol. II at 199.  Ms. Ada Amaro-Sibaja, LFCISD Executive Director for Support Services, conducted an independent investigation of the matter on behalf of the District.  *Id*.  During her investigation, Ms. Amaro-Sibaja interviewed nine students from Vazquez's classes and collected 14 written statements.  A.R. Vol. II at 199-200, 415-417, 421-427, 435-438.  Ms. Amaro-Sibaja determined that the Notice of Warning was warranted, and denied Vazquez's grievance.  A.R. Vol. II at 203.

---

[2] Vazquez showed the movie "Burlesque" to the class. A.R. Vol. II at 440, 442.

[3] The student statements collected by Principal McDonough were admitted over objection as Exhibit 17 in Vazquez's nonrenewal hearing.  A.R. Vol. II at 141.

5

At the conclusion of the 2012-2013 school year, Principal Villareal recommended that Vazquez's one-year term contract be proposed for nonrenewal, and Superintendent Gonzalo Salazar advanced the recommendation to the LFCISD Board of Trustees. A.R. Vol. II at 286, 347. The Board accepted the school administration's recommendation that Vazquez's term contract be non-renewed at its May 13, 2013 meeting. A.R. Vol. II at 286-288. Superintendent Salazar subsequently sent Vazquez notice that his contract had been proposed for nonrenewal, and advised Vazquez of the specific grounds giving rise to the Board's action. *Id.* The reasons for nonrenewal revolved largely around the student complaints of Vazquez's actions and comments within the classroom. *Id.*

Vazquez appealed the proposed non-renewal, and a hearing was held before the LFCISD board pursuant to Tex. Educ. Code § 21.207[4] on June 13, 2013. A.R. Vol. II at 122-23. At the hearing, the administration presented the live testimony of Principal Villareal, Executive Director Amaro-Sibaja, and Superintendent Salazar, as well as numerous documentary exhibits. A.R. Vol. II at 134, 198-99, 207, 408, 410, 440.

The administration also offered the 33 student witness statements, which were collected from 17 different students over the course of the three separate investigations into Vazquez's misconduct in the classroom (conducted by Principal

---

[4] As opposed to a teacher nonrenewal hearing under Tex. Educ. Code § 21.255, the hearing was not conducted before an independent hearing examiner.

McDonough, Principal Villareal, and Executive Director Amaro-Sibaja). A.R. Vol. II at 414-438, 450-457. These statements discuss the unsuitable video that Vazquez showed, the incident where he disciplined a student by pretending to videotape her, and also detail the inappropriate comments that Vazquez made within the classroom. *Id.* The students reported that Vazquez bullied students in the class (for example, mocking a student's clothing choices and insinuating that certain students were overweight), and also made sexually-implicit comments. *Id.* Specifically, Vazquez commented on a female student's "tight little outfit," told another female student that she looked nice when she wore dresses, and also told a female student that when he thinks of her it brings a smile to his face. A.R. Vol. II at 425-428. Notably, the students reported that Vazquez's comments made them feel "uncomfortable." *Id.*

Vazquez offered 18 exhibits into evidence, and testified on his own behalf. A.R. Vol. II at 230-268. Vazquez did not call any other witnesses to testify in his defense. *Id.*

The Los Fresnos CISD Board of Trustees unanimously voted to non-renew Vazquez's term contract based on the reasons set out in the proposed nonrenewal notice, and the evidence and arguments presented at the hearing. A.R. Vol. II at 281-282; *see also* A.R. Vol. II at 286-288.

Vazquez appealed the Board's decision to the Commissioner of Education, contending that the decision was not supported by substantial evidence because the student statements were inadmissible hearsay, and therefore, were improperly considered by the Board in upholding his termination. A.R. Vol. I at 7. The Commissioner determined that the student statements were properly admitted pursuant to the liberal hearsay exception set out in Tex. Gov't Code § 2001.081 and, relying specifically on the evidentiary value of the student statements, upheld the Board's decision.[5] A.R. Vol. I at 22-23.

On subsequent appeal to the district court of Travis County, the trial court found that the student statements were inadmissible hearsay. C.R. 152-54. Further, the trial court held that the District's failure to present Vazquez's students at the nonrenewal hearing to provide live testimony against him "left the Commissioner, and this Court, without substantial evidence to support its decision." C.R. 153.[6] The trial court reversed the Commissioner's decision, and remanded the case to the Commissioner to enter an order reversing the action of the board to non-renew Vazquez's contract. *Id.*

---

[5] The Commissioner specifically stated, "If Petitioner is to be believed his actions would not warrant the nonrenewal of this contract. If the students are [to] be believed, Petitioner's actions do warrant the nonrenewal of his contract. . . If the student statements can be considered for substantial evidence purposes, the nonrenewal of Petitioner's contract should be affirmed because several policy reasons for nonrenewal would have been met." A.R. at 22.

[6] The trial court stated that LFCISD's failure to call "a single witness to provide non-hearsay testimony about the salient facts" resulted in insufficient evidence; however, only Vazquez's students could provide such testimony.

8

## ISSUE PRESENTED

Whether prior statements by students are admissible in teacher nonrenewal hearings conducted pursuant to Texas Education Code § 21.207.

## SUMMARY OF THE ARGUMENT

Previously-recorded students statements should be admitted in teacher nonrenewal hearings conducted under Tex. Educ. Code § 21.207 because the State has a fundamental interest in ensuring the privacy, health, safety, and general well-being of children by protecting them from the psychological trauma of testifying in court procedures. Further, requiring students to provide live testimony contravenes the efficiency and efficacy of the Texas school system. Finally, the purposes of the hearsay rule are satisfied by the admission of student statements because the statements provide the same, or greater, guarantee of trustworthiness and probativeness that live testimony offers.

Therefore, this Court should reverse the trial court's finding that the student statements offered in Vazquez's Section 21.207 nonrenewal hearing are inadmissible hearsay and do not constitute substantial evidence, and should affirm the Commissioner's decision upholding Los Fresnos CISD's termination of Vazquez's employment.

9

## STANDARD OF REVIEW

This Court has expressly held that, under a substantial evidence review, which is applicable to this appeal, the Commissioner of Education should be given great deference to his interpretation of the provisions of the Texas Education Code. *See Dodd v. Meno*, 870 S.W.2d 4, 7 (Tex. 1994) (holding that construction of statute by agency charged with its enforcement entitled to serious consideration, so long as construction is reasonable and does not contradict plain language of statute); *see also Gilder v. Meno*, 926 S.W.2d 357, 360 (Tex. App.—Austin 1996, writ denied). As this Court has stated, "[t]he Commissioner is the officer charged with administration of appeals under the TCNA. We accord his interpretation of the statute because of his expertise and experience in dealing with the practical problems of preserving local decision-making while still providing for an appeal to a state administrative body." *Id.* at 360. As shown below, the decision of the Commissioner in this case is reasonable and should be affirmed.

## ARGUMENT AND AUTHORITIES

### I.     The State has a Paramount Interest in Protecting School-Age Children

It is well-settled law that "a State's interest in safeguarding the physical and psychological well-being of a minor is compelling." *Osborne v. Ohio*, 495 U.S. 103, 109 (1990). This "compelling" interest is reflected in the steadily-growing body of statutes that has been enacted on a state and national level to protect

10

school-age children, as well as by the judicial opinions upholding such legislation and further broadening its scope.

## A.    Legislative Protection of School-Age Children

State and federal legislators have enacted expansive legislation designed to promote the safety, health, and privacy of students. *See e.g.*, 29 U.S.C. § 1232g (Family Education Rights and Privacy Act "FERPA" ensures the privacy of student records); 42 U.S.C. §§ 1751-1769 (sets requirements for health and nutrition with respect to school lunch programs); Tex. Educ. Code § 37.081 (enables the separation and isolation of students who threaten the safety of other students); Tex. Code of Crim. Proc. § 63.019 (imposes requirements for school record systems to prevent student kidnapping). This legislation evidences our society's concentrated efforts to protect students' physical and psychological well-being.

In the same vein, Texas lawmakers have also created statutory safeguards to prevent school employee misconduct that victimizes students. *See* Tex. Penal Code § 21.12 (making it a second-degree felony for a school employee to engage in any kind of sexual contact with a student of the school where the employee works). In upholding the constitutionality of this legislation, this Court held that the State's interest in protecting children is particularly important in the school context. *Ex Parte Morales*, 212 S.W.3d 483, 496 (Tex. App.—Austin 2006, pet.

denied) (recognizing that students are particularly vulnerable to teachers' misuse of the "great trust and confidence [placed in educators] by the school, parents, and public.") Notably, by categorizing the protected class in terms of student-status, rather than age, legislators have acknowledged the vulnerability of all students within the school system, even those on the verge of graduating.[7]

Moreover—in harmony with Appellants' stance that student statements should be admissible in § 21.207 nonrenewal hearings—Texas legislators have shielded school-age children from testifying in administrative, civil, and criminal courtroom procedures by enacting hearsay exceptions for out-of-court child statements. *See, e.g.*, Tex. Educ. Code § 21.255 (allowing hearsay child testimony to "protect the privacy of a witness who is a child"); Tex. Code of Crim. Proc. §§ 38.071, 51.095 (providing various mechanisms to allow child witness to provide out-of court testimony against a defendant in criminal proceedings); Tex. Fam. Code §§ 104.002-104.006 (allow child hearsay testimony in civil cases); Tex. Gov't Code § 2001.081, 121-122 (allowing child hearsay in administrative proceedings). This significant collection of statutes demonstrates the Texas Legislature's pointed and resolute intent to protect school-age children from the psychological trauma of providing live testimony in a formal proceeding.

---

[7] *See* House Research Organization Bill Analysis, Acts 2003, HB 532, 73rd Leg. (R.S.) (noting that the bill would ensure that sexual activity with a student over 17 by a school employee would result in a criminal offense and would not be subject to any affirmative defenses based on the age difference between the victim and defendant).

**B.    Judicial Protection of School-Age Children**

In the seminal case, *Maryland v. Craig*, 497 U.S. 836 (1990), the U.S. Supreme Court found:

> Given the State's traditional and transcendent interest in protecting the welfare of children, and buttressed by the growing body of academic literature documenting the psychological trauma suffered by child abuse victims who must testify in court . . . the importance of [the State's] interest in protecting child abuse victims from the emotional trauma of testifying [should not be second-guessed.]

*Id*. at 855 (holding that the use of closed-circuit televised testimony does not violate the constitutional protections afforded to criminal defendants).

Adhering to this principle, Texas courts have steadfastly upheld legislation allowing child hearsay testimony as constitutionally-permissible. *See e.g.*, *Briggs v. State*, 789 S.W.2d 918, 923-924 (Tex. Crim. App. 1990) (upholding the constitutionality of Tex. Code. Crim. Proc. § 38.071).  Furthermore, in light of the State's paramount interest in protecting children, Texas courts are endowed with the power to permit out-of-court child statements in courtroom procedures—even beyond the hearsay exceptions specifically provided by statute.  *See Gonzalez v. State*, 818 S.W.2d 756, 765 (Tex. Crim. App. 1991) (allowing child hearsay testimony even though the provisions of Tex. Code of Crim. Proc. § 38.071 were not met); *see also Marz v. State*, 953 S.W.2d 321, 329 (Tex. App.—Austin 1997), *aff'd*, 987 S.W. 2d 577 (upholding the trial court's admission of child testimony

13

that did not meet the requirements of Tex. Code of Crim. Proc. § 38.071 and affirming the defendant's 23-year prison sentence).

## II. Excluding Student Statements Contravenes the State's Interest in Protecting Children and Maintaining an Efficient Educational System

In addition to protecting the well-being of children, the State has an interest in "the support and maintenance of an *efficient* system of public free schools." *Ex Parte Morales*, 212 S.W.3d 483, 496 (Tex. App—Austin 2006, pet. denied) (citing Tex. Const. Art. VII § 1) (emphasis added). As set forth below, Vazquez's contention that student statements are inadmissible in § 21.207 teacher nonrenewal hearings contravenes both of these two fundamental State interests.

Teachers spend the vast majority of their days within the confines of their classroom—unobserved by anyone but children between the ages of 5 and 18.[8] As a result of this unique classroom cocoon, students are often the *only* individuals that can provide first-hand accounts of teacher misconduct.[9] Consequently, student testimony is essential to the removal of unfit educators and, thus, an indispensable component to a § 21.207 nonrenewal hearing.

---

[8] Vazquez was observed and evaluated by his school principal on 6 separate occasions for a total of 3 hours and 10 minutes during the four years preceding his nonrenewal. A.R. Vol. II at 356-388. In comparison, during the same time frame Vazquez spent approximately 720 days and 5,000 hours in a classroom under the observation of his students. *See* Tex. Admin. Code § 129.1029(c)(2) (requiring 180 instructional days).

[9] Here, Vazquez's comments were made only within the hearing of his students. A.R. Vol. II at 414-438. Likewise, his inappropriate actions (*e.g.*, pretending to videotape a student) were observed only by his students. *Id.*

As such, the exclusion of pre-recorded student statements in § 21.207 hearings (*i.e.*, allowing the trial court's ruling to stand) will result in the following:

- **Psychological trauma to students**

School districts will be compelled to subject students—potentially as young as 5 or 6 years old—to the psychological trauma of giving live testimony against an authority figure before an audience of their parents, teachers, principals, school board members, classmates, and other members of the public.[10] This testimony may be painful or humiliating for the student, particularly if it involves allegations of sexual impropriety.[11] This testimony may also expose the student to retaliation from other school employees or bullying from his or her classmates.

Additionally, as the Commissioner noted in this case, requiring live student testimony at a non-renewal hearing will expose children to the trauma of undergoing "cross examination by an attorney who is zealously advocating for his client's employment." C.R. 23.

- **Waste of school resources**

School districts will be obligated to spend considerable time, effort, public funds, and other resources persuading students to testify at nonrenewal hearings, as

---

[10] Vazquez's nonrenewal hearing was closed, but a nonrenewal hearing may be open to the public upon the teacher's request. Tex. Educ. Code § 207(a); *see also* A.R. Vol. II at 123.

[11] For example, it likely would be painful and humiliating for Vazquez's students to testify about being mocked for their clothing choices and implied they were fat. A.R. Vol. II at 414, 417, 420-421.

well as convincing their parents to allow it. *See* Tex. Educ. Code § 21.207. These logistical challenges are particularly magnified due to the timing of nonrenewal hearings, which typically take place after students have been released for the summer break, and given that the school district is not granted subpoena power under Tex. Educ. Code § 21.207. *See* Tex. Educ. Code §§ 21.206-207, 256.[12]

- **Decreased quality of educational services provided to students**

If a school district's efforts to present live student testimony are unsuccessful, then there will often be insufficient evidence to support the teacher's nonrenewal. Consequently, poorly-performing teachers will remain in classrooms, and Texas students will be subjected to sub-quality educational services.

- **Student exposure to physical, sexual, and emotional abuse**

Additionally, a school district's inability to non-renew a teacher (because a student refused, or was unable, to testify at the § 21.207 nonrenewal hearing) potentially exposes students to future physical, sexual, and emotional abuse at the hands of that teacher. This is particularly concerning in light of the rising number of sexual allegations against educators.[13]

---

[12] Here, Vazquez's hearing was held on June 13th, when students are likely to be away at summer camp or on a family vacation. A.R. Vol. II at 117.

[13] The number of investigations by TEA staff specifically on allegations of inappropriate relationships between school district employees and students has increased from 141 in 2009-2010 to 179 in 2013-2014—an increase of 27 percent in only three years. *See* TEA News Releases, *Texas Safe Schools Week: Shared Responsibility in Identifying, Reporting Inappropriate Educator-Student Relationships*, Oct. 23, 2014, www.tea.texas.gov. Here, part of the student testimony concerned Vazquez's sexually-implicit comments regarding a female student's "tight little outfit," another female student looking nice when she wore dresses, and how it brings a smile to his face when he thinks of yet another female student. A.R. Vol. II at 425-428.

16

Therefore, excluding student statements from § 21.207 nonrenewal hearings—and thereby requiring live testimony from students—threatens the well-being of school-age children, and also impedes the efficiency and efficacy of the Texas school system.

## III. Student Statements are Sufficiently Trustworthy and Reliable to Satisfy the Purposes of the Hearsay Rule

In their briefs to this Court, the Commissioner and Los Fresnos CISD argue that the Texas Rules of Evidence do not apply to § 21.207 nonrenewal hearings, and therefore, the student statements were not subject to the hearsay rule and were properly admitted pursuant to the procedural rules adopted by the LFCISD Board.[14] Alternatively, Appellants argue that the student statements were admissible under the liberal hearsay exceptions provided under Tex. Gov't Code § 2001.081.[15] Both arguments essentially pivot on the inquiry: Were the statements sufficiently trustworthy for the LCISD board to consider in reaching its decision to non-renew Vazquez's term contract? Without waiving or otherwise detracting from the validity of Appellants' arguments—but looking beyond the mechanical intricacies addressed by the Commissioner and LFCISD—the student statements at issue were admissible in the nonrenewal hearing because they satisfy the fundamental purpose of the hearsay rule to ensure the reliability of evidence.

---

[14] See Los Fresnos CISD's Appellate Brief at p. 35; Commissioner's Appellate Brief at p. 17.

[15] See Los Fresnos CISD's Appellate Brief at p. 51; Commissioner's Appellate Brief at p. 18.

The hearsay rule "is more than a technical rule. It is a principle, whose purpose is assurance that a full and truthful disclosure of facts will be possible. It must [only] be as broad as its purpose." *State v. Oakley*, 356 S.W.2d 909, 915 (Tex. 1962) (dissent by J. Smith). The hearsay exceptions (including the exception provided by Tex. Gov't Code § 2001.081) allow otherwise inadmissible hearsay testimony if it is shown to be reliable and trustworthy, and if the evidence is not otherwise reasonably available.[16]

Importantly, student statements are made close in time to the event described, when the student's recollections are still fresh and distinct.[17] In contrast, student testimony in teacher nonrenewal hearings is typically given after several months, even years, have passed since the teacher misconduct occurred. *See* Tex. Educ. Code §§ 21.206-207, 256 (dictating that teacher non-renewal hearings may only be held on the conclusion of the school year). As such, the statements typically provide greater clarity and depth than live testimony would render. *See, e.g.*, Tex. R. Evid. 803(1) (hearsay exception allowing present sense impressions).

In addition to being nearer in time, student statements also provide greater probativeness than live testimony because the statements are prepared within a safe

---

[16] *See, e.g.*, Tex. R. of Evid. 803, 804; *see also Cano v. Nino's Paint & Body Shop*, 2009 LEXIS 2713, at *12 (Tex. App.—Houston [14th Dist.] April 16, 2009, no pet.) (holding that the trial court was within its discretion to admit business records that failed to fully satisfy the hearsay exception because the records were sufficiently trustworthy).

[17] The student statements were collected in April 2012 and March-April 2013, much closer in time to when the events occurred than if the students testified live at Vazquez's nonrenewal hearing on June 13, 2013. A.R. Vol. II at 117, 205, 414-438, 450-457.

18

atmosphere, where students can fully describe the events without the intimidating presence of the offending teacher, the principal, superintendent, other school employees, board members, parents, and various community members.[18]

Further, as addressed previously in this brief, live student testimony is not readily available due to: (1) students' reluctance to testify in a public setting against an authority figure about topics of a potentially sensitive nature; (2) parents' averseness to their child suffering the psychological trauma of testifying in a courtroom setting and undergoing cross examination; (3) the difficulty in locating students during the summer break; and (4) the administration's inability to subpoena student testimony. *Supra* at 15-16.

Finally, Los Fresnos CISD made the existence of the statements known—including the particulars of the statements—sufficiently in advance of the statements' use to allow Vazquez a fair opportunity to prepare to meet them. A.R. Vol. II at 286-345, 408, 410, 440. Vazquez could have presented witnesses to rebut the student statements and bolster his own testimony, but he chose not to do so. A.R. Vol. II at 230-268

In sum, testimony offered by students in prerecorded statements has the same, or greater, degree of trustworthiness, reliability, and probativeness than if the students' live testimony was offered at teacher nonrenewal hearings. As such, the

---

[18] In the present case, students were individually asked open-ended questions in the privacy of the LFCISD administrator's office, and asked to write out their answers. *See* A.R. Vol. II at 201, 413-438.

student statements were properly admitted in Vazquez's nonrenewal hearing and served as substantial evidence in support of the LFCISD Board's decision to non-renew his term contract.

## CONCLUSION

Pre-recorded student statements should be admissible in nonrenewal hearings conducted under Tex. Educ. Code § 21.207 in light off the State's fundamental interests in protecting children and ensuring an efficient school system. Further, student statements are sufficiently trustworthy and reliable to satisfy the purposes of the hearsay rule. Thus, the student statements against Vazquez were properly admitted and constituted substantial evidence in support of the LFCISD Board's decision to non-renew Vazquez's term contract. Therefore, *amicus curiae*, TASB LAF, respectfully requests that this Court reverse the trial court's judgment and affirm the Commissioner's decision upholding the nonrenewal action.

Respectfully submitted,

ROGERS, MORRIS & GROVER, L.L.P.

_____
CLAY T. GROVER
State Bar No. 08550280
cgrover@rmgllp.com
CAITLIN H. SEWELL
State Bar No. 24074432
csewell@rmgllp.com
5718 Westheimer, Ste. 1200
Houston, Texas   77057
Telephone:   (713) 960-6000
Facsimile:    (713) 960-6025

ATTORNEYS FOR *AMICUS CURIAE*
TEXAS ASSOCIATION OF SCHOOL
BOARDS LEGAL ASSISTANCE FUND

# CERTIFICATE OF COMPLIANCE

The undersigned certifies that this *Amicus Curiae* Brief complies with the requirements of the Texas Rules of Appellate Procedure.

1.   The word count of this document is 4,510.

2.   The brief complies with the briefing rules for parties.

3.   The brief is being tendered on behalf of Appellants.

4.   The source of any fees paid or to be paid for the preparation of this brief is the Texas Association of School Boards Legal Assistance Fund.

5.   Copies of this brief have been served on all parties.

_____
Clay T. Grover

## CERTIFICATE OF SERVICE

This is to certify that, on February 3, 2015, a true and correct copy of the foregoing document has been served on the following by electronic service:

Mr. Mark W. Robinett
BRIM, ARNETT & ROBINETT, P.C.
2525 Wallingwood Drive
Building 14
Austin, Texas 78746
mrobinett@brimarnett.com
Telephone: (512) 328-0048
Facsimile: (512) 328-4814

Ms. Stacy Tuer Castillo
WALSH, ANDERSON, GALLEGOS, GREEN & TREVINO, P.C.
100 NE Loop 410, Suite 900
San Antonio, Texas 78216
scastillo@wabsa.com
Telephone: (210) 979-6633
Facsimile: (210) 979-7024

Ms. Jennifer L. Hopgood
Assistant Attorney General
Administrative Law Division
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
jennifer.hopgood@texasattorneygeneral.gov

_____
ATTORNEY FOR *AMICUS CURIAE*

23